IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:20-cv-1069-RAH |
| ) | [WO] |
| $77,246.00 IN UNITED STATES ) | |
| CURRENCY, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| D'LIVRO LEMAT BEAUCHAMP ) | |
| ) | |
| Claimant. ) | |

## MEMORANDUM OPINION AND ORDER

From an unknown time until April 21, 2020, D'livro Beauchamp, then a medical doctor, engaged in a drug distribution conspiracy with Deandre Gross and others, where Beauchamp would write prescriptions for oxycodone, a Schedule II controlled substance, for individuals who did not have a legitimate medical need for the medication. In return for his services, Beauchamp was paid $350 in cash per prescription. Beauchamp was subsequently criminally charged and pleaded guilty to the conspiracy under a plea agreement entered into with the United States (Government). The Government thereafter filed this complaint, seeking forfeiture *in rem* of the $77,246.00 in U.S. currency ("the subject currency") that was seized during a search of Beauchamp's medical practice. The Government then filed for summary judgment, which Beauchamp opposes in his own motion for summary judgment. For the reasons discussed below, the Government's summary judgment motion is due to be **GRANTED**, and Beauchamp's motion is due to be **DENIED**.

1

## I.  JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1345, which grants district courts exclusive jurisdiction over all actions in which the United States is a plaintiff, and by 28 U.S.C. § 1355, which provides jurisdiction over forfeiture proceedings. *In rem* jurisdiction and venue are proper and not contested by any party.

## II.  STANDARD OF REVIEW

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" based on the materials in the record. Fed. R. Civ. P. 56(a), (c). The court must view the evidence and make all reasonable inferences drawn therefrom "in the light most favorable to the nonmovant." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Applicable substantive law identifies those facts that are material. *Id.* An issue is not genuine if it is unsupported by evidence or created by evidence that is "merely colorable, or is not significantly probative." *Id.* at 249 (citations omitted).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can satisfy its burden of proving the absence of a genuine dispute by citing to materials in the record or by showing the nonmovant cannot produce evidence to establish an element essential to their case to which it has the burden of proof. Fed. R. Civ. P. 56(c)(1); *Celotex Corp.*, 477 U.S. at 322–23. If the movant meets this burden, the burden shifts to the nonmoving party to establish "specific facts showing that there is a genuine issue for trial" with evidence

beyond the pleadings. *Celotex Corp.*, 477 U.S. at 324. Generally, a "mere existence of a scintilla of evidence" supporting the nonmoving party's case is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.

## III. BACKGROUND

Beauchamp possessed a license to operate a medical practice and provide legitimate medical services, including prescribing controlled substances such as oxycodone. At an unknown time, Beauchamp was approached by a patient and friend, Deondre Gross, who asked if Beauchamp would be willing to issue oxycodone prescriptions to "Gross and others" referred by Gross. Gross did not have a legitimate medical need for oxycodone and any individual referred to Beauchamp by Gross would likewise also not have had a medical need for oxycodone.

From that unknown date until approximately April 21, 2020, Beauchamp issued regular prescriptions for oxycodone to Gross and individuals referred to him by Gross. Most of these prescriptions were for thirty 90-milligram tablets of oxycodone hydrochloride. Beauchamp received cash payments in return.

On July 27, 2020, law enforcement executed a search warrant on Beauchamp's medical practice and seized approximately thirty boxes of medical records, numerous computers, guns, and the subject U.S. currency.

A large quantity of cash was found in a desk drawer and a cardboard box in Beauchamp's private office, where only he had access. The currency was divided among numerous envelopes, some of which were labeled with names of unknown persons and others with names of Beauchamp's patients, some were simply labeled "deposit" with a date, and others lacked any markings at all. (Doc. 46-3.) Additionally, within the desk drawer, law enforcement found lists of patients who were known to have received illegal oxycodone prescriptions from the scheme. (Docs. 46-4, 46-6.) Law enforcement also found fourteen firearms and eleven bump

stocks, some of which were in the bathroom adjoining the room where the large quantity of currency was found. (Doc. 48-8.)

On September 14, 2020, a one-count Information was filed against Beauchamp in the Middle District of Alabama alleging violations of 21 U.S.C. § 846. (Doc. 46-10.) Beauchamp entered into a plea agreement with the Government (Doc. 46-9), and on October 20, 2020, Beauchamp pleaded guilty to the one-count Information. (Doc. 46-11.) On November 29, 2022, Beauchamp was sentenced to a term of imprisonment for 135 months (*id.*), which was reduced to 78 months following a resentencing on January 29, 2024.

## IV.   DISCUSSION

The Government seeks forfeiture of the currency found during the search of Beauchamp's medical practice pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A) for Beauchamp's violations of 21 U.S.C. § 841(a)(1) (manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute or dispense a controlled substance), and 21 U.S.C. § 846 (attempting or conspiring to violate the Controlled Substances Act). (Doc. 1.)

"The Controlled Substances Act provides for the civil forfeiture of money and other things of value 'furnished or intended to be furnished by any person in exchange for a controlled substance . . . , all proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate any violation of th[e] [Controlled Substances Act]." *United States v. Bird*, No. 21-11260, 2021 WL 5834306, at *2 (11th Cir. Dec. 9, 2021) (quoting 21 U.S.C. § 881(a)(6)). The Government must "establish, by a preponderance of evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1); *United States v. $183,791.00 in U.S. Currency*, 391 F. App'x 791, 794 (11th Cir. 2010). Specifically, "[t]o obtain civil forfeiture, the government must establish by a preponderance of evidence 'a substantial connection between the property and the offense.'" *United States v.*

4

*$291,828.00 in U.S. Currency*, 536 F.3d 1234, 1237 (11th Cir. 2008) (quoting 18 U.S.C. § 983(c)(3)).

A district court must "look at the 'totality of the circumstances' when determining whether the government has satisfied this standard." *$183,791.00 in U.S. Currency*, 391 F. App'x at 794 (citing *United States v. $121,100.00 in U.S. Currency*, 999 F.2d 1503, 1507 (11th Cir. 1993)). The "Government may use evidence gathered after the filing of a complaint for forfeiture to establish" that the property is subject to forfeiture. 18 U.S.C. § 983(c)(2); *Bird*, 2021 WL 5834306, at *2 (citing *$291,828.00 in U.S. Currency*, 536 F.3d at 1237). Such evidence can include "'circumstantial evidence and hearsay,' and the district court should evaluate the evidence presented with 'a common sense view to the realities of normal life.'" *$291,828.00 in U.S. Currency*, 536 F.3d at 1237 (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1440 (11th Cir. 1991)).

Only after the Government has met its burden does the burden shift to the claimant to prove by a preponderance of the evidence a defense to the forfeiture or to prove that the property is not otherwise subject to forfeiture. 18 U.S.C. § 983(d).

### A. Factors Supporting Forfeitability

"Pursuant to § 881(a)(6), the government is not required to demonstrate that . . . seized currency was connected with any particular drug transaction; instead, the government need only show that the money was 'related to some illegal drug transaction.'" *United States v. $21,175.00 in U.S. Currency*, 521 F. App'x 734, 739 (11th Cir. 2013) (quoting *United States v. $242,484.00 in U.S. Currency*, 389 F.3d 1149, 1160 (11th Cir. 2004) (en banc)). Under the totality of the circumstances here, the Government has shown that the subject currency is due to be forfeited. Five considerations support this conclusion.

First, Beauchamp has pleaded guilty to and been convicted of a multi-year, cash-for-prescriptions drug conspiracy in violation of 21 U.S.C. §§ 841, 846 after

5

entering into a plea agreement with the Government. (Doc. 46-9; Doc. 46-11.) Further, Beauchamp has spoken at-length about his role in the conspiracy, including how he received cash for writing bogus prescriptions for numerous known and unknown persons brought to him by Gross or another co-conspirator, Maurice Daughtry. (Doc. 46-12 at 7–10.) "A claimant's record of drug activity is a highly probative factor in the forfeiture calculus." *United States v. $67,220.00 in U.S. Currency*, 957 F.2d 280, 286 (6th Cir. 1992); *see United States v. $87,118.00 in U.S. Currency*, 95 F.3d 511, 519 (7th Cir. 1996); *United States v. $19,960.00*, 897 F.2d 1457, 1462–63 (8th Cir. 1990). His plea agreement, guilty plea, conviction, and sworn testimony are highly probative factors in the forfeitability of the subject currency. These facts are not disputed.

     Second, large sums of currency can indicate illegal drug activity. "Although a large amount of cash alone is insufficient to meet the government's burden, it is 'highly probative of a connection to some illegal activity.'" *$183,791.00 in U.S. Currency*, 391 F. App'x at 795 (quoting *$121,100.00 in U.S. Currency*, 999 F.2d at 1507); *see also United States v. $121,100.00 in U.S. Currency*, 999 F.2d at 1507; *see also United States v. $22,991.00, more or less, in U.S. Currency*, 227 F. Supp. 2d 1220, 1232 (S.D. Ala. 2002) ("[T]he defendant currency, $22,991.00, is an unusually large amount of cash to be transported in the trunk of an automobile. The Court deems this to be highly probative, although not dispositive, circumstantial evidence of a link between this exorbitant amount of cash and illegal drug activity." (citation omitted)). And here, the subject currency is of a suspiciously large amount ($77,246.00). While not dispositive, this fact does weigh in favor of the Government's summary judgment motion.

     Third, the manner in which the subject currency was stored is unorthodox for a legitimate business or medical practice. *See United States v. $252,300.00 in U.S. Currency*, 484 F.3d 1271, 1274–75 (10th Cir. 2007) (finding that the large amount

6

of seized currency and the fact that it was bundled in stacks held by rubber bands added to the finding that the government had met its burden); *$183,791.00 in U.S. Currency*, 391 F. App'x at 795 (noting that large quantities of cash rubber-banded into bundles can indicate drug activity). Law enforcement located and seized $77,246.00 in cash from a desk drawer (Doc. 46-3) and a cardboard box (Doc. 46-4) in Beauchamp's personal office at his medical practice, which could only be accessed by Beauchamp himself and where law enforcement also found numerous guns. While it is not illegal for someone to store large quantities of cash in a desk drawer or cardboard box, it is highly unusual for a legitimate business or medical practice. And further, it is common for individuals engaged in illegal drug transactions to store and conceal cash in an unorthodox manner. This factor likewise weighs in favor of the Government's summary judgment motion.

Fourth, the currency was found with documents associated with the drug conspiracy. This included a list of the initials of those persons receiving the illegal prescriptions along with a street or intersection location and a date of an unspecified month (docs. 46-5, 46-6), and a list that contained the full names of other co-conspirators and their dates of birth (doc. 46-7). This factor weighs in the Government's favor.

Relatedly, and importantly, the medical practice where the subject currency was found was also used in the drug conspiracy. Despite Beauchamp's claim in his brief that "[t]here is no evidence that any conspiracy activity took place in [his] medical building or his personal office in the medical building" (doc. 54 at 22), Beauchamp stated in sworn testimony that he conducted many of the cash-for-prescription transactions in the parking lot of his medical practice and he would also personally authorize pharmacies to fill prescriptions from his office, (doc. 46-12 at 10–18). Beauchamp also stated that patients referred to him by co-conspirators would sometimes come to the medical practice for bogus appointments and that

7

Beauchamp stored much of the money from the conspiracy at his office. (Doc. 61-1.) In sum, the location of his medical practice was key to the conspiracy.

Fifth, the currency was found with fourteen firearms as well as eleven bump stocks. (Doc. 46-8.) Beauchamp argues that the presence of firearms was understandable because "he was a hunter." (Doc. 54 at 21.) It is not lost on the Court that the firearms (such as a Sig Sauer 5.56 caliber rifle or a Spike Tactical 5.7 caliber rifle) and bump stocks seized during the search are not the types of firearms typically used for game hunting. But even so, "common sense" dictates that a normal medical doctor would not keep a small arsenal of firearms in the bathroom of his private office in his medical practice as a legitimate business practice. Further, numerous courts have found the presence of firearms as indicative of illegal drug transactions.[1] *See U.S. v. Martinez*, 808 F.2d 1050, 1057 (5th Cir. 1987), *cert denied*, 481 U.S. 1032 (1987) (firearms are "'tools of the trade' of those engaged in illegal drug activities and are highly probative in proving criminal intent."); *U.S. v. Kearney*, 560 F.2d 1358, 1369 (9th Cir. 1977), *cert denied*, 434 U.S. 971 (1977) ("Possession of a firearm demonstrates the likelihood that a defendant took steps to prevent contraband or money from being stolen."). This factor also weighs in favor of the Government.

The Government has established by a preponderance of evidence that the subject currency is due to be forfeited because: (1) Beauchamp pleaded guilty to the underlying criminal drug conspiracy; (2) the subject currency is an unusually large amount of cash; (3) the currency was stored in an unorthodox manner with lists of co-conspirators; (4) the currency was found in a location where conspiracy-associated activity took place; and (5) the currency was in the presence of firearms and bump stocks. *$183,791.00 in U.S. Currency*, 391 F. App'x at 794; *see United*

---

[1] At his criminal sentencing, the Government did not oppose Beauchamp's objection to a firearm enhancement. As such, the Court did not apply the enhancement, although it easily could have.

*States v. $67,220.00 in United States Currency*, 957 F.2d at 284 ("The aggregation of facts, each one insufficient standing alone, may suffice to meet the government's burden.").

  B. **Commingling**

The Eleventh Circuit has held that "when a claimant to a forfeiture action has actual knowledge, at any time prior to the initiation of the forfeiture proceeding, that claimant's legitimate funds are commingled with drug proceeds, traceable in accord to the forfeiture statute, the legitimate funds are subject to forfeiture." *United States v. One Single Family Residence Located at 15603 85th Avenue North*, 933 F.2d 976, 982 (11th Cir. 1991). "Once legitimate funds are commingled with those subject to forfeiture, all of the funds become subject to forfeiture." *United States v. $52,000.00, more or less, in U.S. Currency*, 508 F. Supp. 2d 1036, 1044–45 (S.D. Ala. 2007) (holding that claimant forfeited $15,000 in legitimate money because it was commingled with $37,000 which had a "substantial connection" to illegal activity).

Beauchamp argues that the subject currency came from legitimate business services and was not commingled with proceeds from the conspiracy. He attempts to prove this by dumping into the record a stack of cash receipts from his medical practice. (Docs. 55-3–55-9, 55-19, 55-21–55-26.) These records reflect cash receipts from legitimate medical services provided by Beauchamp's practice from January 6, 2020 to July 15, 2020. And to Beauchamp's credit, some of the envelopes found in his desk drawer are dated after Beauchamp ceased activity in the conspiracy. But not all. Many envelopes are dated prior to April 2020, and many have no dates at all. While it could be true that *some* of the cash came from legitimate activities, and the Government concedes as much, it is highly improbable that all of the $77,246.00 in cash found by law enforcement came from Beauchamp's legitimate medical practice. This inference is bolstered by the existence of lists of

9

known co-conspirators in the drug conspiracy found in close proximity to the subject currency, as well as Beauchamp's failure to account for or otherwise state what happened to the cash that he did receive from the cash-for-prescriptions conspiracy. In short, all paths lead to the inescapable conclusion that the $77,246.00 in cash included a substantial amount attributable to the cash-for-prescriptions conspiracy, and that to the extent any came from legitimate sources, it was commingled with these proceeds and are therefore subject to forfeiture as well.

### C. Beauchamp's Motion for Summary Judgment

In his own motion for summary judgment, Beauchamp argues (1) the Government breached the plea agreement in his criminal action by seeking civil forfeiture of the subject currency, (2) the Government's civil forfeiture action is limited by the plea agreement, (3) since the plea agreement was breached, the Government lacks the necessary conviction to move forward with this civil forfeiture action, and (4) the Government cannot prove there is a substantial connection between the subject currency and drug activity because the currency was not found in a place where the conspiracy occurred and was not commingled. With his fourth argument having already been rejected, the Court will now address the arguments related to Beauchamp's plea agreement.

As a necessary background, forfeiture proceedings can proceed either criminally or civilly. Criminal forfeiture provisions under 21 U.S.C. § 853 "authorize an *in personam* action against a defendant in a criminal case, and forfeiture in such a case is imposed as a sanction against the defendant upon his conviction." *United States v. Certain Real Property Located at 2525 Leroy Lane*, 910 F.2d 343, 346 (6th Cir. 1990). In other words, because criminal forfeiture can only be imposed as part of a criminal defendant's sentence, a conviction is a necessary component. In contrast, a civil forfeiture proceeding under 21 U.S.C. § 881(a)(6) is an *in rem* action brought against seized property pursuant to the legal

10

fiction that the property itself is defined "as the offender . . . ." *Austin v. United States*, 509 U.S. 602, 615 (1993) (discussing the history of forfeiture law in the United States). And since this proceeding is civil, no conviction is required. *See United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361–62) (1984) (acquittal on gun violation under § 922 does not bar civil forfeiture under § 982(d)); *United States v. $6,190.00 in U.S. Currency*, 581 F.3d 881, 885 (9th Cir. 2009) (a district court's jurisdiction over a civil forfeiture case does not depend on there being a related criminal case; it depends solely on the existence of a federal statute authorizing forfeiture); *United States v. Two Parcels of Real Prop. Located at 1010 N. Liberty Street*, 80 F. Supp. 2d 1298, 1303 n.18 (M.D. Ala. 2000) (because no conviction is required for civil forfeiture, defendant can be made to forfeit property involved in the convicted offense as well as property involved in another offense).

Beauchamp pleaded guilty to and was convicted of a criminal drug conspiracy. (Doc. 46-11.) This conviction is being used as mere evidence that Beauchamp was at the center of a drug conspiracy and is weighed as a factor in granting the Government's summary judgment motion. While this type of forfeiture action does not require a conviction, the fact of conviction does bolster the Government's argument that the subject currency is due to be forfeited.

But even if the plea agreement could limit the Government's ability to seize the subject currency in a separate civil forfeiture proceeding, which it does not, Beauchamp again grossly mischaracterizes his plea agreement. Beauchamp points to the following provision:

> 12. The defendant agrees to pay the $100 assessment fee on the date of sentencing. Beauchamp acknowledges that this plea agreement does not contain any agreement as to criminal forfeiture. Beauchamp understands that the Government may seek to obtain or permanently retain, *through civil or criminal forfeiture*

11

>*proceedings*, any property used in the course of the commission of the offense or obtained through the proceeds of the offense.

(Doc. 46-9 at 6 (emphasis added)). This provision is clear and unambiguous. Beauchamp argues that this provision limits the Government to seize only proceeds involving his interactions with Gross, because that is what the Information provides as a basis for charging him with violating the Controlled Substances Act. (Doc. 54 at 14.) He argues that the Government is targeting proceeds from his illegal agreements with other conspirators, and not only Gross. But the Information specifically provides that Beauchamp agreed to conspire "with D.G. *and with others*" to violate the Controlled Substances Act. (Doc. 46-10) (emphasis added). And in his plea agreement, Beauchamp "admits the allegations charged in the Information." (Doc. 46-9 at 6.) Further, in his plea agreement, he admitted that "from the unknown date until on or about April 21, 2020, Beauchamp, *at D.G.'s direction*, issued monthly prescriptions for oxycodone to D.G. and *to other individuals referred to Beauchamp by D.G.*" (*Id.* at 8 (emphasis added)). His self-serving subjective beliefs about the plea agreement are irrelevant. All that matters is the plain text of its provisions. And nothing in Beauchamp's plea agreement limits the Government's ability to seize the subject currency or use evidence gathered as a result of his cooperation from being used against the Defendant currency in this civil forfeiture case. Indeed, the text of the plea agreement acknowledges that very possibility.

## V. CONCLUSION

Beauchamp was at the center of a cash-for-prescriptions drug conspiracy. A conspiracy to which he pleaded guilty. The Government has met its burden and Beauchamp has not.

For the reasons above, it is **ORDERED** that:

1. Plaintiff's *Motion for Summary Judgment* (Doc. 45) is **GRANTED** and the Defendant $77,246.00 in United States Currency is **FORFEITED** to the Plaintiff**;**
2. Claimant's *Motion for Summary Judgment* (Doc. 54) is **DENIED;**
3. Claimant's *Motion to Strike* (Doc. 62) is **DENIED.**

A separate Final Judgment will follow this order.

**DONE** on this the 28th day of February 2024.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE